**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**KYLE M. ALEXANDER**                                        **CIVIL ACTION**

**VERSUS**                                                   **NO. 05-0683**

**WARDEN BURL CAIN**                                         **SECTION "S"(4)**

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C),** and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

**I.    Factual Background**

The petitioner, Kyle M. Alexander ("Alexander"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On March 18, 1997, Alexander was indicted by an Assumption

---

[1] Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

Parish Grand Jury for the First Degree Murder of Bryan J. Sagona.[3]  Prior to trial, the charge was amended to that of Second Degree Murder.[4]

The record reflects that, on March 7, 1997, Clint Bonadona and Bryan Sagona went to see Alexander to buy marijuana.[5]  Bonadona and Sagona knew Alexander because they attended the same high school.  Alexander and his friend, Lance North, rode around with Bonadona and Sagona looking for someone from whom they could buy the drugs to no avail.  Alexander told Bonadona and Sagona to come back later and they would try again.  When the two young men returned sometime later, Alexander, North, and Jonathan Fox, another of Alexander's friends, pretended to arrange a drug transaction.  They told Bonadona and Sagona that it was to take place at a remote location outside of the city of Donaldsonville.  The group rode together in Bonadona's car to the designated location.  When they arrived, Bonadona and Sagona were both dragged from the car.  Fox shot Bonadona in the head and killed him.  Fox then shot Sagona, who did not die immediately.  Subsequently, Alexander shot Sagona in the head killing him.

Alexander was tried before a jury on June 22 through 25, 1999 and was found guilty of Second Degree Murder.[6]  At a hearing held on July 21, 1999, the Trial Court received and denied Alexander's Motion for New Trial.[7]  After waiver of legal delays, the Trial Court sentenced

---

[3]St. Rec. Vol. 2 of 4, Indictment, 3/18/97.  Alexander was also charged with several other crimes under other case numbers at or around the same time, none of which are relevant to the resolution of this habeas petition.

[4]*Id*., handwritten changes, 11/23/97.

[5]The facts were taken from the opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  St. Rec. Vol. 1 of 4, 1st Cir. Opinion, 2000-KA-1025, p. 2, 2/16/01.

[6]St. Rec. Vol. 2 of 4, Trial Minutes (3 pages), 6/22/99; Trial Minutes (2 pages), 6/23/99; Trial Minutes (3 pages), 6/24/99; Trial Minutes (2 pages), 6/25/99.

[7]St. Rec. Vol. 3 of 4, Motion for New Trial, 7/21/99; St. Rec. Vol. 2 of 4, Sentencing Minutes, 7/21/99.

Alexander to life imprisonment without benefit of parole, probation, or suspension of sentence.[8] The Court also denied Alexander's Motion for Reconsideration of Sentence also filed by counsel at the sentencing hearing.[9]

On appeal to the Louisiana First Circuit Court of Appeal, Alexander's counsel raised two assignments of error:[10] (1) the Trial Court erred in denying the motion for change of venue; and (2) the Trial Court erred in denying the motion for individual voir dire. On February 16, 2001, the Louisiana First Circuit affirmed the conviction and sentence finding the claims to be without merit.[11]

Alexander did not seek rehearing or file for review in the Louisiana Supreme Court.[12] Therefore, his conviction became final on March 18, 2001, which was 30 days after issuance of the appellate court's opinion and no further appellate review was available.[13] *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the appeal process).

## II.   Procedural Background

Almost 11 months later, on February 13, 2002, Alexander submitted a Uniform Application for Post Conviction Relief with the Trial Court.[14] On February 22, 2002, the Trial Court refused

---

[8] St. Rec. Vol. 2 of 4, Sentencing Minutes, 7/21/99.

[9] *Id*.; St. Rec. Vol. 3 of 4, Motion for Reconsideration of Sentence, 7/21/99.

[10] St. Rec. Vol. 1 of 4, 1st Cir. Opinion, 2000-KA-1025, p. 2, 2/16/01.

[11] *Id*.

[12] La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be made within 30 days of the issuance of the judgment. *See also* La. Code Crim. Proc. art. 922(A).

[13] *Id*.

[14] St. Rec. Vol. 1 of 4, Uniform Application for Post Conviction Relief, undated. The document was mailed to the Trial Court on February 13, 2002. Rec. Doc. No. 1, Exh., Mail Receipt, 2/13/02.

to consider the Application finding that it failed to comply with the requirements set forth in La. Code Crim. P. art. 926(C), namely, failing to complete the affidavit on page seven of the Application.[15]

Sixteen months later, on June 17, 2003,[16] Alexander mailed a Motion for Summary Judgment of Original Application for Post Conviction Relief, along with a second copy of his Application for Post Conviction Relief, which were filed in the Trial Court on June 19, 2003.[17] The Trial Court denied the Motion on July 2, 2003, finding it to be procedurally improper under the Louisiana Code of Criminal Procedure. The court further recognized that, to the extent the Motion sought post conviction relief at page 14, Alexander raised five assignments of error: (1) La. Rev. Stat. Ann. § 14:24[18] is unconstitutionally vague and it relieves the State of the burden of persuasion; (2) La. Rev. Stat. Ann. § 14:30.1[19] is unconstitutional by allowing the State to prosecute under alternative theories of guilt; (3) Ineffective assistance of counsel for failing to raise the issue of the

---

[15]St. Rec. Vol. 1 of 4, Trial Court Order, 2/22/02. Article 926(C) requires that the application be signed by the petitioner and be accompanied by his affidavit that the allegations contained in the petition are true to the best of his information and belief.

[16]Alexander claims to have mailed this pleading on July 17, 2003. Rec. Doc. No. 1, Original Brief on the Merits, p. 3.

[17]St. Rec. Vol. 1 of 4, Motion for Summary Judgment, 6/19/2003.

[18]La. Rev. Stat. Ann. §14:24 provides as follows: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."

[19]At the time of the crime, La. Rev. Stat. Ann. §14:30.1 provided as follows:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill.
Whoever commits the crime of second degree murder shall be imprisoned at hard labor for life and shall not be eligible for parole, probation or suspension of sentence for a period of twenty years.

constitutionality of § 14:30.1; (4) Ineffective assistance of counsel for failing to raise the issue of the constitutionality of § 14:24; and (5) The evidence was insufficient to prove guilt. The court found the claims to be without merit. The Court's order was filed into the record on July 7, 2003.[20]

Over six weeks later, on August 14, 2003, Alexander mailed an untimely[21] Writ Application in the Louisiana First Circuit which was filed on August 28, 2003.[22] The Court held on October 6, 2003, that the Application appeared to be a request for the production of documents and transcripts and was therefore procedurally improper.[23] The Court further instructed that, if Alexander intended to seek review of the denial of a request for production, the Application did not comply with La. App. Ct. Rule 4-5(f), (g) and (h),[24] which require a copy of the pleading and relevant district court order.

---

[20] *Id.*

[21] Louisiana law provides a 30 day period to file for review of a trial court's ruling with the circuit court of appeal. La. App. Rule 4-3; *see also*, La. Code Crim. P. art. 922.

[22] Rec. Doc. No. 1, Exh., 1st Cir. Letter, 2003-KW-1794, 8/28/03; Mail Receipt, 8/14/03.

[23] Rec. Doc. No. 1, Exh., 1st Cir. Order, 2003-KW-1794, 10/6/03.

[24] Rule 4-5 provides in relevant part as follows:
The original application for writs shall be signed by the applicant or counsel of record, and shall contain an affidavit verifying the allegations of the application and certifying that a copy has been delivered or mailed to the respondent judge and to opposing counsel, and to any opposing party not represented by counsel. The affidavit shall list all parties and all counsel, indicating the parties each represents. The affidavit also shall list the addresses and telephone numbers (if available) of the respondent judge, opposing counsel and any opposing party not represented by counsel. The original and duplicate shall have the pages of the application and attached documents and exhibits consecutively numbered and shall contain these items: [. . .]
(f) a copy of the judgment, order, or ruling complained of (if by written judgment, order, or ruling);
(g) a copy of the judge's reasons for judgment, order, or ruling (if written);
(h) a copy of each pleading on which the judgment, order, or ruling was founded. [. . .]

Alexander sought rehearing and the Louisiana First Circuit denied the request on November 19, 2003.[25] The Court held that Alexander failed to attach the proper documentation to consider the request as one seeking review of the denial of post conviction relief.

Thereafter, on December 2, 2003, Alexander mailed a timely Writ Application to the Louisiana Supreme Court which was filed on December 17, 2003.[26] The Court denied the Application without reasons on January 28, 2005.[27]

### III. Federal Petition

On March 7, 2005, Alexander filed a Petition for Federal Habeas Corpus Relief in which he did not specify any particular claims for review.[28] Under a broad reading, Alexander refers this Court to issues addressed by the State Trial Court in connection with his Application for Post Conviction Relief and his Motion for Summary Judgment.[29] Thus, affording Alexander every benefit of liberal construction, the Court considers him to have raised the following five grounds for relief: (1) La. Rev. Stat. Ann. § 14:24 is unconstitutionally vague and it relieves the State of the burden of persuasion; (2) La. Rev. Stat. Ann. § 14:30.1 is unconstitutional by allowing the State to prosecute under alternative theories of guilt; (3) Ineffective assistance of counsel for failing to raise the issue of the constitutionality of § 14:30.1; (4) Ineffective assistance of counsel for failing to raise the issue of the constitutionality of § 14:24; and (5) The evidence was insufficient to prove guilt.

---

[25]Rec. Doc. No. 1, Exh. 1st Cir. Order, 2003-KW-1794, 11/19/03.

[26]Rec. Doc. No. 1, Exh., La. S. Ct. Letter, 2003-KH-3462, 12/17/03 (showing postmark date of 12/2/03).

[27]St. Rec. Vol. 2 of 4, La. S. Ct. Order, 2003-KH-3462, 1/28/05.

[28]Rec. Doc. No. 1; *see also*, Rec. Doc. No. 4, Additional Exhibits.

[29]*See e.g.*, Rec. Doc. No. 1, Original Brief on the Merits, p. 6.

The State filed an Answer and Memorandum in Support of Answer alleging that Alexander's federal petition is not timely filed and that he has failed to exhaust state court remedies.[30] Alternatively, the State argues that his claims are without merit.

Alexander filed a Traverse to the State's opposition urging the Court to find his petition to be timely.[31] He specifically claims that he never received a copy of the State Trial Court's February 22, 2002 denial of his first Application for Post Conviction Relief. To that end, he requests that the Court provide him with tolling for the period he believes that Application to have been pending. He also suggests that some of the dates reported by the State in its opposition are incorrect. He further argues that he has exhausted his state court remedies and that his claims have merit.

### IV.   Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[32] applies to Alexander's petition, which is deemed filed in this court under the federal "mailbox rule" on February 15, 2005.[33]

---

[30] Rec. Doc. No. 5.

[31] Rec. Doc. No. 6.

[32] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[33] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Alexander's federal habeas petition on March 7, 2005. Alexander dated his signature on the petition on February 15, 2005, which is the earliest date on which it could have been submitted to prison officials for mailing.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

Initially, the State argues that Alexander has failed to exhaust state court remedies and that his petition is untimely filed. The Court will first consider the State's defense that Alexander's petition was not timely filed as this will be dispositive of the petition.

## V.  **Statute of Limitations**

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[34]  *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). Under the AEDPA, Alexander's conviction became final on Sunday March 18, 2001, or the next business day, Monday March 19, 2001, when he did not seek review of his direct appeal. For ease of reference, and

---

[34]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

affording Alexander every benefit, the conviction is considered final on March 19, 2001, for purposes of this Report.

Under the plain language of § 2244, he had until March 19, 2002, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Alexander's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

### A.     Statutory Tolling

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). The United States Fifth Circuit has clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of the prison mailbox rule. *Causey v. Cain*, __ F.3d __, 2006 WL 1413490 at *3-*4 (5th Cir. May 24, 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120

(2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 2001 WL 995164, slip op. at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

The federal courts have also determined that requests for transcripts and copies of documents from the record are not "applications for post-conviction or other collateral review" and therefore do not affect the timeliness calculations.  *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcripts is not "other collateral review" for tolling purposes); *see also Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, 2002 WL 63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, 2001 WL 1006062 at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receipt of transcript, not required to file an application, does not warrant equitable tolling).

In this case, Alexander's AEDPA filing period began to run on March 20, 2001, the day after his conviction is deemed final. The filing period ran uninterrupted for 365 days, until March 19, 2002. Alexander had no properly filed state application for post conviction relief or other collateral review pending during that time period. His federal petition is deemed filed on February 15, 2005, almost three years after the AEDPA filing period expired.

The Court is aware that Alexander mailed a Uniform Application for Post Conviction Relief to the Trial Court on February 13, 2002. That Application was not properly filed. On February 22, 2002, the Trial Court ruled that the pleading failed to comply with the filing requirements set for the La. Code Crim. P. art. 926(C) because Alexander failed to complete the affidavit on page seven of the form. The United States Supreme Court has held that a pleading is not "properly filed" within the meaning of § 2244(d)(2) unless the petitioner has complied with all of the State's procedural filing requirements. *Pace*, 544 U.S. at 413-414. Alexander is not entitled to statutory tolling for this filing.

Even if a reviewing Court were to consider applying tolling for the February 13, 2002 submission, Alexander's federal petition is still untimely. As stated above, the AEDPA filing period would begin to run on March 20, 2001. The filing period would run uninterrupted for 330 days, until February 13, 2002, when Alexander mailed his Uniform Application for Post Conviction Relief to the State Trial Court. That Application was denied on February 22, 2002 and remained pending for an additional 30 days, until Sunday, March 24, 2002, or the next business day, Monday, March 25, 2002, when he did not file for review.

The AEDPA filing period began to run again for another 35 days until it expired on April 29, 2002. This federal petition, deemed filed February 15, 2005, came almost three years later.

The record reflects that, after the Trial Court's ruling on February 22, 2002, Alexander had no other properly filed state application for post conviction relief or other collateral review pending. He had no other submissions to the state courts for another 449 days, when he mailed his Motion for Summary Judgment to the State Trial Court on June 17, 2003. According to the State Trial Court, even that pleading was not proper for purposes of post conviction review under the Louisiana Code of Criminal Procedure. This filing also would not qualify to toll the filing period for that reason.

Alexander's federal habeas petition is untimely under the statutory tolling calculation above. The Court must now determine whether Alexander is entitled to equitable tolling of the period so described.

### B.   Equitable Tolling

The doctrine of equitable tolling allows for tolling of the AEDPA's limitation period when the petitioner has been pursuing his rights diligently, and there are rare or extraordinary circumstances preventing timely filing. *Pace*, 544 U.S. at 418 ; *see also Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998), *cert. denied*, 525 U.S. 1091 (1999); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-419; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

In this case, Alexander alleges that he is entitled to additional tolling for his Uniform Application for Post Conviction Relief mailed February 13, 2002. The record confirms that this Application was denied by the Trial Court for procedural failings on February 22, 2002. Alexander

contends, however, that he did not receive a copy of that ruling. He alleges that he thought the Application to be languishing before the Trial Court for well over a year when he decided to file his Motion for Summary Judgment along with a duplicate Application for Post Conviction Relief.

In support of his arguments, he provides the Court with copies of mail log entries which he claims show his receipt of rulings and letters from the state courts in connection with this conviction.[35] The logs, however, are not verified or certified as exhaustive in anyway. Nevertheless, even if Alexander did not receive a copy of the February 22, 2002, ruling, he has failed to show due diligence on his part. He has not explained why he waited over sixteen months to question the disposition of his prior Application if he believed it to be still pending. He submitted no filings to the Trial Court during that time period. Thus, there is no showing of due diligence on his part.

In addition, even if the Court were to afford him tolling for the entire period of time from filing on February 13, 2002, to the resolution of his subsequent Motion for Summary Judgment on July 7, 2003, his petition is still untimely.

Under this alternative calculation, the AEDPA filing period would begin to run, as stated above, on March 20, 2001. It would run uninterrupted for 330 days until February 13, 2002, when he mailed the procedurally improper Uniform Application for Post Conviction Relief. Under this equitable theory, the Application would remain pending until August 6, 2003, which is 30 days after the Trial Court's order was issued on June 7, 2003.

The filing period would begin to run again uninterrupted for the remaining 35 days when it would expire on August 7, 2003. Yet another year and one-half would pass before Alexander is deemed to have filed his federal habeas corpus petition on February 15, 2005.

---

[35]Rec. Doc. No. 4, Exh., Mail Logs.

The Court recognizes that Alexander mailed a Writ Application to the Louisiana First Circuit Court of Appeal on August 14, 2003. However, the Application was construed by that Court as an improper request for documents over which it had no jurisdiction and which failed to comply with Louisiana procedural law, specifically La. App. Ct. Rule 4-5. On rehearing, the Court reiterated that the Application was not properly filed even if he intended to seek post conviction relief. The document therefore was not a properly filed state application for post conviction relief or other collateral review. Alexander is not entitled to tolling in connection with this filing.

Thus, Alexander has not alleged and the record does not reflect any basis for equitable tolling in this case. In addition, his dilatory procedural history and procedurally improper filings do not demonstrate diligence on his part in pursuing post conviction relief.

The recommendation of the undersigned is to deny Alexander's request for equitable tolling for the pendency of his procedurally improper Application for Post Conviction Relief and the procedurally improper Motion for Summary Judgment. In the alternative, even if tolling is granted for that period, for the reasons stated above, Alexander's federal petition is still untimely.

**C.     Conclusion**

For all of the foregoing reasons, Alexander's federal habeas corpus petition, deemed filed on February 15, 2005, was filed over three years after the AEDPA filing period expired on March 19, 2002, as initially calculated above. His federal habeas petition is untimely and should be dismissed as time barred.

**VI.    Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Kyle M. Alexander's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this \_\_\_12th\_\_\_ day of _____June_____, 2006.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**